<table>
<tr><td>

DISTRICT COURT, COUNTY OF BOULDER, STATE OF COLORADO

Boulder Justice Center
1777 6th Street
Boulder, CO 80302

_____

**PLAINTIFF: ROBERT REEVES**

**V.**

**DEFENDANTS: AMAZON.COM, Inc., a foreign corporation and ZURICH AMERICAN INSURANCE COMPANY, a foreign insurance company**

_____

Attorney for Plaintiff:
Name:  Michael P. Zimmerman Esq.
Hull & Zimmerman, P.C.
Address:  11178 Huron Street, Unit 2
          Northglenn, CO 80234
e-mail: mike@hzinjurylaw.com
Phone Number:  303-423-1770
Fax Number:  303-423-2102
Atty. Reg.# 15683

</td><td>

DATE FILED: July 1, 2020 11:06 AM
FILING ID: 6C994D516D6CE
CASE NUMBER: 2020CV30535

▲ **COURT USE ONLY** ▲

_____

Case Number:


Div.:          Ctrm.:

</td></tr>
</table>

## COMPLAINT AND JURY DEMAND

Plaintiff, above named, by and through his attorneys, Hull & Zimmerman P.C., for a Complaint against the Defendants, alleges and avers as follows:

1.  Plaintiff Robert Reeves (hereinafter "Plaintiff") has been a resident of the State of Colorado at all relevant times herein.

2.  Upon information and belief, Defendant Amazon.com Inc. (hereinafter "Amazon.com") is a foreign corporation conducting business within the State of Colorado and operates a delivery service under the trade name, Amazon Flex.

3.  Upon information and belief, Defendant Zurich American Insurance Company (hereinafter "Defendant Zurich") is a foreign insurance company conducting business within the State of Colorado.

4.  On or about October 29, 2017, Plaintiff worked as an independent contractor providing delivery services for Defendant Amazon.com through its platform known as Amazon Flex.

EXHIBIT A

5.      On or about October 29, 2017, Plaintiff had a separate and distinct position as an employee of Defendant Amazon.com as a quality control analyst.

6.      On October 29, 2017, at approximately 6:09 PM, Plaintiff was driving southbound on Interstate 25, at approximately 84th Avenue while making a delivery for Amazon Flex.

7.      Plaintiff was in the far right-hand lane. Plaintiff had come to a complete stop for traffic conditions.

8.      While stopped for traffic conditions, Plaintiff's vehicle was struck from behind by a vehicle driven by Kathren Payan.

9.      The resulting car crash was solely attributable to the negligence of Kathren Payan.

10.     Plaintiff's conduct did not contribute to the car crash.

11.     As a direct and proximate result of the negligence of Kathren Payan, Plaintiff suffered injuries and losses.

12.     Plaintiff's injuries included, but were not necessarily limited to, concussion, cervical and lumbar strain, headaches, phobic disturbance, dizziness, and anxiety.

13.     Plaintiff incurred medical expenses as a result of the injuries sustained in the car crash.

14.     Such medical expenses include, but are not limited to, the following:

| Provider | Amount |
| --- | --- |
| 3D Vision | $326.00 |
| A Fox PT | $1,213.00 |
| North Metro Fire | $1,181.00 |
| Boulder Valley Vision Therapy | $3,168.00.00 |
| Broomfield Family Practice | $784.00 |
| Dr. Erica Cwalina | $14,070.00 |
| Diversified Radiology ( DOS 10/29/17) | $306.00 |
| Emergency Service Physician (DOS 10/31/17) | $665.00 |
| Fyzical Physical Therapy | $5,629.00 |
| Good Samaritan Hospital (DOS 10/30/17) | $6,281.94 |

EXHIBIT A

| | |
|---|---|
| Independent Physical Therapy | $1,311.00 |
| North Suburban Hospital (DOS 10/29/17) | $25,870.28 |
| Dr Alissa Wicklund/ Orthopedic and Spine Center of the Rockies | $1,684.00 |
| Panorama Orthopedic | $894.00 |
| Radiology Imaging (DOS 10/31/17) | $124.00 |
| Reventics (Carepoint ER Physicians DOS 10/29/17) | $695.00. |
| Thornton Fire | $980.00 |
| **Total** | **$65,182.22** |

15.  As of October 29, 2017, Plaintiff was earning $12.50 an hour, plus a $0.50/hour wage differential in his employment with Defendant Amazon.com as a quality control analyst.

16.  As of October 29, 2017, Plaintiff worked approximately 40 hours each week with Defendant Amazon.com as a quality control analyst.

17.  Plaintiff missed approximately 69 weeks of work, as associated with his quality control analyst position, resulting in lost wages of approximately $35,880.

18.  As an employee of Defendant Amazon.com and in his position as a quality control analyst Plaintiff enjoyed perquisite benefits consisting of: health insurance, retirement benefits, and stock options. Plaintiff lost the benefit of such perquisite benefits, which such value is currently not known.

19.  As of October 29, 2017, Plaintiff had earned the following amounts as an Amazon Flex driver for the time period of August 11, 2017 through October 29, 2017: $280.00, $72.00, $216.00, $223.00, $146.00, $149.00, $92.00, $36.00, and $131.78. This averages approximately $122.00 per week, which Plaintiff earned as an Amazon Flex driver.

20.  Driver Kathren Payan maintained an automobile liability insurance policy with GEICO, which such policy had a limit of $25,000.00 per person for bodily injury liability.

21.  On or about January 24, 2018, GEICO offered to tender the full extent of its $25,000.00 policy limits afforded to its insured, Kathren Payan.

EXHIBIT A

22.     Upon information and belief, Defendant Zurich issued a policy of automobile insurance to Defendant Amazon.com, which afforded automobile insurance coverage to drivers of Amazon Express.

23.     Upon information and belief, such policy of auto insurance provides Uninsured/Underinsured bodily injury coverage to Amazon Express drivers with coverage limits of $1,000,000.00 per person.

24.     Upon information and belief, Defendant Amazon.com contractually retained financial responsibility for a portion of such UM/UIM coverage, more commonly known as a "self-insured retention".

25.     For the amount of the self-insured retention, Defendant Amazon.com owes Plaintiff the same legal duties as those required of Defendant Zurich.

26.     Upon information and belief, Defendants, individually and/or jointly, utilized Sedgwick Claims Management Services Inc. as their agent to manage claims associated with such policy.

27.     Requests were made to Sedgwick to produce a copy of the relevant insurance policy.

28.     The Defendants have not produced a copy of the relevant insurance policy to Plaintiff.

29.     On or about March 23, 2018, Sedgwick adjuster, Casey Kerwood, granted permission to Plaintiff to accept the settlement offer from GEICO in the amount of $25,000.00.

30.     Plaintiff accepted the settlement offer from GEICO on or about April 29, 2018, which released GEICO and Kathren Payan from further liability for the subject car crash.

31.     On or about October 24, 2019, Plaintiff was informed that the assigned Sedgwick adjuster had been changed from Casey Kerwood to Kevin Smith.

32.     On or about October 30, 2019, Plaintiff submitted material documenting his injuries, medical expense and lost wages arising from the subject car crash to Sedgwick, requesting that Defendants evaluate Plaintiff's claim for underinsured motorist's benefits.  Such claim was submitted via email to Kevin Smith at Kevin.Smith@sedgwick.com.  Documents were submitted via Dropbox.

33.     On November 6, 2019, Plaintiff resubmitted such documents to the address provided by Sedgwick, P.O. Box 14132, Lexington, KY, 40512.

EXHIBIT A

34.   On November 20, 2019, Plaintiff was advised by Kevin Smith that the material had been received, but that he was unable to find it.

35.   Shortly thereafter, Kevin Smith indicated that he did not have the material and was confusing it with another matter.

36.   Plaintiff obtained a physical address for Sedgwick so that the material could be delivered on a CD by Federal Express.

37.   On November 27, 2019, Kevin Smith acknowledged receiving the CD from Federal Express.

38.   Kevin Smith indicated that he would review the material "over the holiday".

39.   On January 13, 2020, Plaintiff's counsel emailed Kevin Smith to discover the status of the review of such material.

40.   On January 15, 2020, Kevin Smith apologized for the delay and indicated that he would finish his review by the "end of the week".

41.   On January 17, 2020, Kevin Smith indicated that he had finished his review of the material, but was "waiting for authority approval".

42.   On January 20, 2020, Kevin Smith advised that, "Before authority is approved, I need to have a medical review completed. The expected turnaround time is within twenty (20) days."

43.   On February 18, 2020, Kevin Smith advised Plaintiff that he had "been told that the report should be received by the 19th, tomorrow" and that he would respond by the end of the week.

44.   On February 19, 2020, Defendants, through Kevin Smith, requested medical records for the Plaintiff from 2012, which need to encompass the stroke Plaintiff had suffered, as well as assault injuries and prior injuries from a separate car crash.

45.   Kevin Smith alleged that Plaintiff made a social media post on March 13, 2012 at 8:45 p.m. stating, "I had a stroke and well everything has exploded for me financially, no insurance, no job, etc.".

46.   Plaintiff has never suffered a stroke.

47.   Plaintiff has never been provided a copy of the medical review obtained by Defendants.

48.   Kevin Smith never shared the social media site from which this social media post was allegedly obtained.

EXHIBIT A

49. On March 30, 2020, Plaintiff supplied to Sedgwick his pre-crash medical records from Evergreen Health, UW Medical Center, Kaiser Permanente, Providence Regional Medical Center and Greenwood Chiropractic.

50. On April 1, 2020, Plaintiff supplied to Sedgwick his pre-crash medical records from Dr. Musnick.

51. On April 21, 2020, Kevin Smith indicated that he would have a response to the request for evaluation of Plaintiff's UIM claim by "early next week".

52. On May 6, 2020, Plaintiff's counsel inquired as to the status of the UIM evaluation.

53. On May 7, 2020, Kevin Smith indicated that he was "finishing my report to submit for settlement authority".

54. On May 15, 2020, Kevin Smith advised that a meeting with Amazon for authority approval was scheduled for May 27th.

55. On June 2, Kevin Smith indicated that Plaintiff's UIM claim was "on the agenda for tomorrow's settlement authority meeting".

56. On June 8, 2020, Plaintiff's counsel once again inquired as to the status of Defendants' evaluation of Plaintiff's UIM claim.

57. On June 8, 2020, Plaintiff's counsel specifically requested that Defendants tender monies for the medical expense not covered by the underlying settlement of $25,000.00, which such medical bills amounted to $40,182.22 ($65,182.22 - $25,000.00) by June 12, 2020.

58. On June 8, 2020, Plaintiff's counsel emailed Kevin Smith and specifically requested that Defendants tender monies for the lost wages not covered by the underlying settlement of $25,000.00, which such lost wages amounted to at least $45,946.08, by June 12, 2020.

59. Kevin Smith replied to Plaintiff's counsel's email of June 8, 2020, and indicated that, "We did review this claim in our meeting last week. They requested I update my report with some additional information and actually want to increase the offer from what my recommendation was. I will have the report completed today."

60. On June 9, 2020, Kevin Smith requested information about the circumstances as to why Plaintiff's employment as a quality control analyst for Defendant Amazon.com ended.

EXHIBIT A

61.   On June 9, 2020, Kevin Smith requested additional medical records regarding Plaintiff's pre-crash medical treatment, but did not specify any medical providers from whom records should be sought.

62.   On June 9, 2020, Kevin Smith was informed that Plaintiff's employment terminated in November 2018, when Defendant Amazon.com was unable to accommodate Plaintiff's work-related restrictions.

63.   On June 9, 2020, Kevin Smith was informed that Plaintiff had no memory of any other medical providers dating back to 2012 that had not already been disclosed.

64.   As of July 1, 2020, there had been no further communication from Defendants or their agents with Plaintiff or his representatives.

65.   Defendants did not pay for the medical expense of $40,182.22 ($65,182.22 - $25,000.00) by June 12, 2020.

66.   Defendants did not pay for the lost wages of $45,946.08 by June 12, 2020.

67.   Defendants have not offered any explanation for their refusal to tender the medical expense or the lost wage expense.

68.   Defendants have had a sufficient and extensive opportunity to evaluate the medical and financial information submitted by Plaintiff regarding the harms and losses Plaintiff sustained a result of the subject car crash.

69.   As part of their investigation, Defendants exercised their rights to seek and obtain independent medical opinions regarding the injury sustained by Plaintiff in the subject car crash.

70.   Defendants have not shared with Plaintiff the extent of medical opinions sought, or the full extent of medical opinions provided in association with such independent medical opinions.

71.   Defendants had the right to seek additional medical information from Plaintiff's treating physicians.

72.   Defendants did not exercise their right to seek further information from Plaintiff's treating physicians.

73.   Defendants have obtained no medical information suggesting that Plaintiff's medical expense is unrelated to the subject car crash or was unnecessary.

74.   Defendants have obtained no medical information suggesting that Plaintiff's lost wages were unrelated to injuries from the subject car crash or were unnecessary.

EXHIBIT A

## PLAINTIFF'S FIRST CLAIM FOR RELIEF
### (Declaratory Judgement)

75.    Plaintiff incorporates all previous allegations as if more fully set forth herein.

76.    Plaintiff is entitled to underinsured motorist coverage for his injuries, damages, and losses incurred as a consequence of the subject collision and pursuant to the contract terms of the subject insurance policy issued by Defendants. Plaintiff is entitled to declaratory relief to that effect pursuant to C.R.C.P. 57.

77.    Plaintiff has complied with all known conditions precedent to coverage under the insurance policy issued by Defendants.

## PLAINTIFF'S SECOND CLAIM FOR RELIEF
### (Breach of Contract)

78.    Plaintiff incorporates all previous allegations as if more fully set forth herein.

79.    To the extent that Plaintiff has failed to comply with any of the known or unknown contractual obligations of the relevant insurance policy, Defendants have not been prejudiced by the failure to comply.

80.    To the extent that Plaintiff has failed to comply with any of the contractual obligations, Defendants may not rely on this failure to comply because Defendants breached one or more material obligations under the policy before any alleged failure to comply of Plaintiff.

81.    At all times relevant to this action, Defendants, jointly and individually, owed to Plaintiff the implied duty of good faith and fair dealing in the insurance contract.

82.    Defendants, jointly and individually, have breached the contract with Plaintiff by denying any underinsured motorist benefits under the policy.

83.    As a direct and proximate result of Defendants' respective breaches of contract, Plaintiff has incurred damages in the amount to be proved at the time of trial.

## PLAINTIFF'S THIRD CLAIM FOR RELIEF
### (Bad Faith Breach of Insurance Contract)

84.    Plaintiff incorporates all previous allegations as if more fully set forth herein.

85.    As a provider of insurance services, Defendant Zurich, at all times, had a duty to be actuated by good faith and fair dealing in everything pertaining thereto, abstain from deceptive or misleading practices and keep, observe, and practice the principles of law and equity in all matters pertaining to the business of insurance.

EXHIBIT A

86.   As a provider of insurance services as such relates to its self-insured retention under the relevant insurance contract, Defendant Amazon.com, at all times, had a duty to be actuated by good faith and fair dealing in everything pertaining thereto, abstain from deceptive or misleading practices and keep, observe, and practice the principles of law and equity in all matters pertaining to the business of insurance.

87.   Under Colorado law, every insurance contract contains an implied covenant of good faith and fair dealing and imposes on insurers a duty to act in good faith with their insureds.   Pursuant to its implied duty of good faith and fair dealing, Defendants, individually and jointly, owed to Plaintiff an obligation to treat Plaintiff's interests with equal consideration to their own respective interests.

88.   Defendants, individually and jointly, breached their respective duties of good faith and fair dealing as owed to Plaintiff, including but not limited to:

   a.   Failing to give equal consideration to the interest of Plaintiff, its insured;

   b.   When investigating Plaintiffs claims, failing to diligently search for evidence that supported their insured's (Plaintiff's) claims;

   c.   Seeking to discover only evidence that defeated their insured's (Plaintiff's) claims;

   d.   Unreasonably delaying and/or withholding benefits under the insurance policy without a reasonable basis for delaying and/or withholding benefits, with knowledge or reckless disregard of a lack or reasonable basis for delaying and/or withholding benefits;

   e.   Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the insurance policy;

   f.   Refusing to pay claims without conducting a reasonable investigation based upon all available information;

   g.   Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims after its liability has become reasonably clear;

   h.   Compelling Plaintiff to institute litigation to recover amounts due under the insurance policy by offering substantially less than the amounts Plaintiff is entitled to recover;

   i.   Forcing Plaintiff into the costly and lengthy process of litigation;

   j.   Any further acts which may be discovered.

EXHIBIT A

89.     Defendants' aforesaid conduct was unreasonable and Defendants either knew such conduct was unreasonable or recklessly disregarded the fact that the conduct was unreasonable.

90.     As a direct and proximate result of Defendants' respective breaches of their duties of good faith and fair dealing, Plaintiff has sustained damages in an amount to be proved at trial.

### PLAINTIFF'S FOURTH CLAIM FOR RELIEF
### (Violation of C.R.S. §10-3-1115(1)(A) AND C.R.S. §10-3-1116(1))

91.     Plaintiff incorporates all previous allegations as if more fully set forth herein.

92.     Defendants' denial of Plaintiff's claim for underinsured motorist benefits is unreasonable.

93.     Pursuant to C.R.S. §10-3-1116(1), Plaintiff is entitled to reasonable attorney's fees and two times the covered benefit.

Wherefore, Plaintiff prays that this Honorable Court will grant judgment in his favor and against the Defendants, jointly and severally, in an amount to be determined by the trier of fact, plus pre-judgment and post-judgment interest as provided by law, costs, and for such other and further relief as this Court deems just and proper in the premises.

EXHIBIT A

## JURY DEMAND

Plaintiff hereby demands a jury trial of six (6) on all issues so triable.

Respectfully submitted this 1st day of July, 2020.

Hull & Zimmerman, P.C.
*Original signature on file at the office*
*of Hull & Zimmerman, P. C.*

/s/ Michael P. Zimmerman
Michael P. Zimmerman, #15683
Attorneys for Plaintiff
11178 Huron Street, Unit 2
Northglenn, CO 80234
Telephone: (303) 423-1770

Plaintiff's address:
2780 Signal Creek Place
Thornton, CO 80241

EXHIBIT A

| | |
|---|---|
| DISTRICT COURT, COUNTY OF BOULDER, STATE OF COLORADO<br>Boulder Justice Center<br>1777 6th Street<br>Boulder, CO 80302<br>_____<br>**PLAINTIFF: ROBERT REEVES**<br><br>**V.**<br><br>**DEFENDANTS: AMAZON.COM, Inc., a foreign corporation and ZURICH AMERICAN INSURANCE COMPANY, a foreign insurance company**<br>_____ | ▲ **COURT USE ONLY** ▲<br>_____ |
| Attorney for Plaintiff:<br>Name:  Michael P. Zimmerman Esq.<br>Hull & Zimmerman, P.C.<br>Address:  11178 Huron Street, Unit 2<br>           Northglenn, CO 80234<br>e-mail: mike@hzinjurylaw.com<br>Phone Number:  303-423-1770<br>Fax Number:  303-423-2102<br>Atty. Reg.# 15683 | Case Number: 2020CV030535<br><br>Div.:          Ctrm.: |
| **FIRST AMENDED COMPLAINT AND JURY DEMAND** | |

Plaintiff, above named, by and through his attorneys, Hull & Zimmerman P.C., for a Complaint against the Defendants, alleges and avers as follows:

1.   Plaintiff Robert Reeves (hereinafter "Plaintiff") has been a resident of the State of Colorado at all relevant times herein.

2.   Upon information and belief, Defendant Amazon.com Inc. (hereinafter "Amazon.com") is a foreign corporation conducting business within the State of Colorado and operates a delivery service under the trade name, Amazon Flex.

3.   Upon information and belief, Defendant Zurich American Insurance Company (hereinafter "Defendant Zurich") is a foreign insurance company conducting business within the State of Colorado.

4.   On or about October 29, 2017, Plaintiff worked as an independent contractor providing delivery services for Defendant Amazon.com through its platform known as Amazon Flex.

EXHIBIT A

5.      On or about October 29, 2017, Plaintiff had a separate and distinct position as an employee of Defendant Amazon.com as a quality control analyst.

6.      On October 29, 2017, at approximately 6:09 PM, Plaintiff was driving southbound on Interstate 25, at approximately 84th Avenue, while making a delivery for Amazon Flex.

7.      Plaintiff was in the far right-hand lane. Plaintiff had come to a complete stop for traffic conditions.

8.      While stopped for traffic conditions, Plaintiff's vehicle was struck from behind by a vehicle driven by Kathren Payan.

9.      The resulting car crash was solely attributable to the negligence of Kathren Payan.

10.     Plaintiff's conduct did not contribute to the car crash.

11.     As a direct and proximate result of the negligence of Kathren Payan, Plaintiff suffered injuries and losses.

12.     Plaintiff's injuries included, but were not necessarily limited to, concussion, cervical and lumbar strain, headaches, phobic disturbance, dizziness, and anxiety.

13.     Plaintiff incurred medical expenses as a result of the injuries sustained in the car crash.

14.     Such medical expenses include, but are not limited to, the following:

| Provider | Amount |
| --- | --- |
| 3D Vision | $326.00 |
| A Fox PT | $1,213.00 |
| North Metro Fire | $1,181.00 |
| Boulder Valley Vision Therapy | $3,168.00.00 |
| Broomfield Family Practice | $784.00 |
| Dr. Erica Cwalina | $14,070.00 |
| Diversified Radiology ( DOS 10/29/17) | $306.00 |
| Emergency Service Physician (DOS 10/31/17) | $665.00 |
| Fyzical Physical Therapy | $5,629.00 |
| Good Samaritan Hospital (DOS 10/30/17) | $6,281.94 |

EXHIBIT A

| | |
|---|---|
| Independent Physical Therapy | $1,311.00 |
| North Suburban Hospital (DOS 10/29/17) | $25,870.28 |
| Dr Alissa Wicklund/ Orthopedic and Spine Center of the Rockies | $1,684.00 |
| Panorama Orthopedic | $894.00 |
| Radiology Imaging (DOS 10/31/17) | $124.00 |
| Reventics (Carepoint ER Physicians DOS 10/29/17) | $695.00. |
| Thornton Fire | $980.00 |
| **Total** | **$65,182.22** |

15.     As of October 29, 2017, Plaintiff was earning $12.50 an hour, plus a $0.50/hour wage differential in his employment with Defendant Amazon.com as a quality control analyst.

16.     As of October 29, 2017, Plaintiff worked approximately 40 hours each week with Defendant Amazon.com as a quality control analyst.

17.     Plaintiff missed approximately 69 weeks of work, as associated with his quality control analyst position, resulting in lost wages of approximately $35,880.00.

18.     As an employee of Defendant Amazon.com and in his position as a quality control analyst Plaintiff enjoyed perquisite benefits consisting of: health insurance, retirement benefits, and stock options. Plaintiff lost the benefit of such perquisite benefits, which such value is currently not known.

19.     As of October 29, 2017, Plaintiff had earned the following amounts as an Amazon Flex driver for the time period of August 11, 2017 through October 29, 2017: $280.00, $72.00, $216.00, $223.00, $146.00, $149.00, $92.00, $36.00, and $131.78. This averages approximately $122.00 per week, which Plaintiff earned as an Amazon Flex driver.

20.     Driver Kathren Payan maintained an automobile liability insurance policy with GEICO, which such policy had a limit of $25,000.00 per person for bodily injury liability.

21.     On or about January 24, 2018, GEICO offered to tender the full extent of its $25,000.00 policy limits afforded to its insured, Kathren Payan.

EXHIBIT A

22.     Upon information and belief, Defendant Zurich issued a policy of automobile insurance to Defendant Amazon.com, which afforded automobile insurance coverage to drivers of Amazon Express.

23.     Upon information and belief, such policy of auto insurance provides Uninsured/Underinsured bodily injury coverage to Amazon Flex drivers with coverage limits of $1,000,000.00 per person.

24.     Upon information and belief, Defendant Amazon.com contractually retained financial responsibility for a portion of such UM/UIM coverage, more commonly known as a "self-insured retention".

25.     Upon information and belief, Defendant Amazon.com attended a meeting with Sedgwick and/or Defendant Zurich to participate in the evaluation of Plaintiff's UIM claim with Zurich.

26.     Upon information and belief, Defendants, individually and/or jointly, utilized Sedgwick Claims Management Services Inc. as their agent to manage claims associated with such policy.

27.     Requests were made to Sedgwick to produce a copy of the relevant insurance policy.

28.     The Defendants have not produced a copy of the relevant insurance policy to Plaintiff.

29.     On or about March 23, 2018, Sedgwick adjuster, Casey Kerwood, granted permission to Plaintiff to accept the settlement offer from GEICO in the amount of $25,000.00.

30.     Plaintiff accepted the settlement offer from GEICO on or about April 29, 2018, which released GEICO and Kathren Payan from further liability for the subject car crash.

31.     On or about October 24, 2019, Plaintiff was informed that the assigned Sedgwick adjuster had been changed from Casey Kerwood to Kevin Smith.

32.     On or about October 30, 2019, Plaintiff submitted material documenting his injuries, medical expense and lost wages arising from the subject car crash to Sedgwick, requesting that Defendants evaluate Plaintiff's claim for underinsured motorist's benefits.   Such claim was submitted via email to Kevin Smith at Kevin.Smith@sedgwick.com.  Documents were submitted via Dropbox.

33.     On November 6, 2019, Plaintiff resubmitted such documents to the address provided by Sedgwick, P.O. Box 14132, Lexington, KY, 40512.

EXHIBIT A

34.     On November 20, 2019, Plaintiff was advised by Kevin Smith that the material had been received, but that he was unable to find it.

35.     Shortly thereafter, Kevin Smith indicated that he did not have the material and was confusing it with another matter.

36.     Plaintiff obtained a physical address for Sedgwick so that the material could be delivered on a CD by Federal Express.

37.     On November 27, 2019, Kevin Smith acknowledged receiving the CD from Federal Express.

38.     Kevin Smith indicated that he would review the material "over the holiday".

39.     On January 13, 2020, Plaintiff's counsel emailed Kevin Smith to discover the status of the review of such material.

40.     On January 15, 2020, Kevin Smith apologized for the delay and indicated that he would finish his review by the "end of the week".

41.     On January 17, 2020, Kevin Smith indicated that he had finished his review of the material, but was "waiting for authority approval".

42.     On January 20, 2020, Kevin Smith advised that, "Before authority is approved, I need to have a medical review completed. The expected turnaround time is within twenty (20) days."

43.     On February 18, 2020, Kevin Smith advised Plaintiff that he had "been told that the report should be received by the 19th, tomorrow" and that he would respond by the end of the week.

44.     On February 19, 2020, Defendants, through Kevin Smith, requested medical records for the Plaintiff from 2012, which needed to encompass an alleged stroke Plaintiff had suffered, as well as assault injuries and prior injuries from a separate car crash.

45.     Kevin Smith alleged that Plaintiff made a social media post on March 13, 2012 at 8:45 p.m. stating, "I had a stroke and well everything has exploded for me financially, no insurance, no job, etc.".

46.     Plaintiff has never suffered a stroke.

47.     Plaintiff has never been provided a copy of the medical review obtained by Defendants.

EXHIBIT A

48.    Kevin Smith never shared the social media site from which this social media post was allegedly obtained.

49.    On March 30, 2020, Plaintiff supplied to Sedgwick his pre-crash medical records from Evergreen Health, UW Medical Center, Kaiser Permanente, Providence Regional Medical Center and Greenwood Chiropractic.

50.    On April 1, 2020, Plaintiff supplied to Sedgwick his pre-crash medical records from Dr. Musnick.

51.    On April 21, 2020, Kevin Smith indicated that he would have a response to the request for evaluation of Plaintiff's UIM claim by "early next week".

52.    On May 6, 2020, Plaintiff's counsel inquired as to the status of the UIM evaluation.

53.    On May 7, 2020, Kevin Smith indicated that he was "finishing my report to submit for settlement authority".

54.    On May 15, 2020, Kevin Smith advised that a meeting with Amazon for authority approval was scheduled for May 27, 2020.

55.    On June 2, 2020, Kevin Smith indicated that Plaintiff's UIM claim was "on the agenda for tomorrow's settlement authority meeting".

56.    On June 8, 2020, Plaintiff's counsel once again inquired as to the status of Defendants' evaluation of Plaintiff's UIM claim.

57.    On June 8, 2020, Plaintiff's counsel specifically requested that Defendants tender monies for the medical expense not covered by the underlying settlement of $25,000.00, which such medical bills amounted to $40,182.22 ($65,182.22 - $25,000.00) by June 12, 2020.

58.    On June 8, 2020, Plaintiff's counsel emailed Kevin Smith and specifically requested that Defendants tender monies for the lost wages not covered by the underlying settlement of $25,000.00, which such lost wages amounted to at least $45,946.08, by June 12, 2020.

59.    Kevin Smith replied to Plaintiff's counsel's email of June 8, 2020, and indicated that, "We did review this claim in our meeting last week. They requested I update my report with some additional information and actually want to increase the offer from what my recommendation was. I will have the report completed today."

60.    On June 9, 2020, Kevin Smith requested information about the circumstances as to why Plaintiff's employment as a quality control analyst for Defendant Amazon.com ended.

EXHIBIT A

61.    On June 9, 2020, Kevin Smith requested additional medical records regarding Plaintiff's pre-crash medical treatment, but did not specify any medical providers from whom records should be sought.

62.    On June 9, 2020, Kevin Smith was informed that Plaintiff's employment terminated in November 2018, when Defendant Amazon.com was unable to accommodate Plaintiff's work-related restrictions.

63.    On June 9, 2020, Kevin Smith was informed that Plaintiff had no memory of any other medical providers dating back to 2012 that had not already been disclosed.

64.    As of July 1, 2020, there had been no further communication from Defendants or their agents with Plaintiff or his representatives.

65.    Defendants did not pay for the medical expense of $40,182.22 ($65,182.22 - $25,000.00) by June 12, 2020.

66.    Defendants did not pay for the lost wages of $45,946.08 by June 12, 2020.

67.    Defendants have not offered any explanation for their refusal to tender the medical expense or the lost wage expense.

68.    Defendants have had a sufficient and extensive opportunity to evaluate the medical and financial information submitted by Plaintiff regarding the harms and losses Plaintiff sustained a result of the subject car crash.

69.    As part of their investigation, Defendants exercised their rights to seek and obtain independent medical opinions regarding the injury sustained by Plaintiff in the subject car crash.

70.    Defendants have not shared with Plaintiff the extent of medical opinions sought, or the full extent of medical opinions provided in association with such independent medical opinions.

71.    Defendants had the right to seek additional medical information from Plaintiff's treating physicians.

72.    Defendants did not exercise their right to seek further information from Plaintiff's treating physicians.

73.    Defendants have obtained no medical information suggesting that Plaintiff's medical expense is unrelated to the subject car crash or was unnecessary.

74.    Defendants have obtained no medical information suggesting that Plaintiff's lost wages were unrelated to injuries from the subject car crash or were unnecessary.

EXHIBIT A

## PLAINTIFF'S FIRST CLAIM FOR RELIEF
### (Declaratory Judgement)

75.     Plaintiff incorporates all previous allegations as if more fully set forth herein.

76.     Plaintiff is entitled to underinsured motorist coverage for his injuries, damages, and losses incurred as a consequence of the subject collision and pursuant to the contract terms of the subject insurance policy issued by Defendant Zurich. Plaintiff is entitled to declaratory relief to that effect pursuant to C.R.C.P. 57.

77.     Plaintiff has complied with all known conditions precedent to coverage under the insurance policy issued by Defendant Zurich.

## PLAINTIFF'S SECOND CLAIM FOR RELIEF
### (Breach of Contract)

78.     Plaintiff incorporates all previous allegations as if more fully set forth herein.

79.     To the extent that Plaintiff has failed to comply with any of the known or unknown contractual obligations of the relevant insurance policy, Defendant Zurich has not been prejudiced by the failure to comply.

80.     To the extent that Plaintiff has failed to comply with any of the contractual obligations, Defendant Zurich may not rely on this failure to comply because Defendant Zurich breached one or more material obligations under the policy before any alleged failure to comply of Plaintiff.

81.     At all times relevant to this action, Defendant Zurich owed to Plaintiff the implied duty of good faith and fair dealing in the insurance contract.

82.     Defendant Zurich breached the contract with Plaintiff by denying any underinsured motorist benefits under the policy.

83.     As a direct and proximate result of Defendant Zurich's breach of contract, Plaintiff has incurred damages in the amount to be proved at the time of trial.

## PLAINTIFF'S THIRD CLAIM FOR RELIEF
### (Bad Faith Breach of Insurance Contract)

84.     Plaintiff incorporates all previous allegations as if more fully set forth herein.

85.     As a provider of insurance services, Defendant Zurich, at all times, had a duty to be actuated by good faith and fair dealing in everything pertaining thereto, abstain from deceptive or misleading practices and keep, observe, and practice the principles of law and equity in all matters pertaining to the business of insurance.

EXHIBIT A

86.     Under Colorado law, every insurance contract contains an implied covenant of good faith and fair dealing and imposes on insurers a duty to act in good faith with their insureds.

87.     Pursuant to its implied duty of good faith and fair dealing, Defendants, individually and jointly, owed to Plaintiff an obligation to treat Plaintiff's interests with equal consideration to their own respective interests.

88.     Defendant Zurich breached its duty of good faith and fair dealing as owed to Plaintiff, including but not limited to:

   a.     Failing to give equal consideration to the interest of Plaintiff, its insured;

   b.     When investigating Plaintiffs claims, failing to diligently search for evidence that supported their insured's (Plaintiff's) claims;

   c.     Seeking to discover only evidence that defeated their insured's (Plaintiff's) claims;

   d.     Unreasonably delaying and/or withholding benefits under the insurance policy without a reasonable basis for delaying and/or withholding benefits, with knowledge or reckless disregard of a lack or reasonable basis for delaying and/or withholding benefits;

   e.     Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the insurance policy;

   f.     Refusing to pay claims without conducting a reasonable investigation based upon all available information;

   g.     Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims after its liability has become reasonably clear;

   h.     Compelling Plaintiff to institute litigation to recover amounts due under the insurance policy by offering substantially less than the amounts Plaintiff is entitled to recover;

   i.     Forcing Plaintiff into the costly and lengthy process of litigation;

   j.     Any further acts which may be discovered.

89.     Defendant Zurich's aforesaid conduct was unreasonable and Defendant Zurich either knew such conduct was unreasonable or recklessly disregarded the fact that the conduct was unreasonable.

EXHIBIT A

90.   As a direct and proximate result of Defendant Zurich's breach of its duty of good faith and fair dealing, Plaintiff has sustained damages in an amount to be proved at trial.

### PLAINTIFF'S FOURTH CLAIM FOR RELIEF
### (Violation of C.R.S. §10-3-1115(1)(A) AND C.R.S. §10-3-1116(1))

91.   Plaintiff incorporates all previous allegations as if more fully set forth herein.

92.   Defendant Zurich's denial of Plaintiff's claim for underinsured motorist benefits is unreasonable.

93.   Pursuant to C.R.S. §10-3-1116(1), Plaintiff is entitled to reasonable attorney's fees and two times the covered benefit.

### PLAINTIFF'S FIFTH CLAIM FOR RELIEF
### (Intentional Interference with Contract)

94.   Plaintiff incorporates all previous allegations as if more fully set forth herein.

95.   Plaintiff is the third-party beneficiary of a valid contract of UIM coverage issued by Defendant Zurich.

96.   Defendant Amazon.com as the named insured of the relevant insurance policy, as issued by Defendant Zurich.

97.   Defendant Amazon.com was aware that such policy of insurance provided UM/UIM coverage to its drivers, such as Plaintiff.

98.   Defendant Amazon.com through its actions intentionally induced Defendant Zurich into failing to timely perform the contractual obligations that Defendant Zurich owed to Plaintiff including, but not limited to, the obligation to evaluate Plaintiff's UIM claim in a timely and good faith manner.

99.   Such actions were done in a wanton and reckless disregard for the harm that it will cause to Plaintiff.

100.   Defendant Amazon.com's conduct caused Plaintiff harm and losses.

Wherefore, Plaintiff prays that this Honorable Court will grant judgment in his favor and against the Defendants in amounts to be determined by the trier of fact, plus pre-judgment and post-judgment interest as provided by law, costs, and for such other and further relief as this Court deems just and proper in the premises.

EXHIBIT A

## JURY DEMAND

Plaintiff hereby demands a jury trial of six (6) on all issues so triable.

Respectfully submitted this 7st day of August, 2020.

Hull & Zimmerman, P.C.
*Original signature on file at the office*
*of Hull & Zimmerman, P. C.*


/s/ Michael P. Zimmerman
Michael P. Zimmerman, #15683
Attorneys for Plaintiff
11178 Huron Street, Unit 2
Northglenn, CO 80234
Telephone: (303) 423-1770

Plaintiff's address:
2780 Signal Creek Place
Thornton, CO 80241

EXHIBIT A

**CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of August, 2020, a true and correct copy of the foregoing First Amended Complaint and Jury Demand was filed and served via ICCES and/or placed in the U.S. Mail with sufficient first-class postage affixed, addressed to:

Jason D. Melichar, Esq.
Laura J. Ellenberger, Esq.
Wilson Elser Moskowitz Edelman & Dicker, LLP
1225 17th Street, Ste. 2750
Denver, CO 80202

/s/    *JoAnn Otto*
*The duly signed original held in the file located at*
*Hull & Zimmerman, P.C.*

EXHIBIT A